**In re Shirley BLAIR, Debtor.**

**David Freishtat and Freishtat, Burke, Mullen & Dubnow, LLC, Plaintiffs,**

**v.**

**Shirley Blair, Defendant.**

**In re Blair Temporaries and Staffing, Inc., Debtor.**

**David Freishtat and Freishtat, Burke, Mullen & Dubnow, LLC, Plaintiffs,**

**v.**

**Blair Temporaries and Staffing, Inc., Defendant.**

**Bankruptcy Nos. 99–20539DK, 99–15568DK.**
**Adversary Nos. 03–01065DK, 03–01066DK.**

United States Bankruptcy Court, D. Maryland, at Baltimore.

Jan. 7, 2005.

Alvin I. Frederick, Washington, DC, Irving Edward Walker, Baltimore, MD, for Plaintiffs.

Jeanett Palacios Henry, Donald M. Temple, Washington, DC, for Defendants.

Janet Nesse, Washington, DC, Chapter 11 Trustee.

Donna Williams Rucker, Silver Spring, MD, for Ms. Blair.

Sunanda K. Holmes, Silver Spring, MD, for Blair Temps.

### MEMORANDUM OF DECISION

DUNCAN W. KEIR, Bankruptcy Judge.

These two adversary proceedings were commenced by Plaintiffs David Freishtat and his law firm, Freishtat, Burke, Mullen & Dubnow, LLC (hereinafter collectively "Freishtat") requesting a declaratory judg-

ment by this court determining that the Defendants, Shirley Blair, individually, and Blair Temporaries and Staffing, Inc. (hereinafter "Blair Temps"), are precluded by the doctrines of *res judicata* and judicial estoppel from bringing any claims against Freishtat for facts and matters arising out of the services rendered in Freishtat's capacity as special counsel to the Chapter 11 Trustee in the bankruptcy case of Blair Temps.[1] Plaintiffs have filed amended motions for summary judgment. After an initial hearing, the court denied the motions for summary judgment upon non-substantive grounds. However, upon subsequent motions for reconsideration filed by Freishtat, the court vacated the Orders denying summary judgment and held a hearing upon the amended motions for summary judgment and the Defendants' opposition thereto. The hearing took place on June 21, 2004, at the conclusion of which the court held the matters under advisement. For the reasons set forth in this Memorandum of Decision, the Motions for Summary Judgment are granted.

## BACKGROUND

On May 6, 1999, Blair Temps filed a voluntary Chapter 11 case in this court. The sole shareholder of Blair Temps was, and is, Shirley Blair, who has also been during all relevant periods of time, the president of Blair Temps. Although Blair Temps was originally proceeding as a debtor-in-possession in its Chapter 11 case, on June 4, 1999, this court ordered the appointment of a Chapter 11 Trustee. Janet Nesse ("Trustee Nesse") was subsequently appointed the Chapter 11 Trustee

for Blair Temps. On February 26, 2003, a plan of reorganization filed by Trustee Nesse was confirmed by Order of this court. The confirmed plan provided payment in full to the six classes of claims and also provided that Ms. Blair would retain her interest in Blair Temps. Additionally, Janet Nesse was appointed Plan Administrator under the terms of the confirmed plan.

On September 3, 1999, Shirley Blair ("Ms. Blair"), individually, filed a voluntary petition for relief under Chapter 13 in this court. The Chapter 13 case of Ms. Blair remained pending until the case was dismissed with prejudice on November 3, 2004 upon the motion of Ms. Blair. The Order of Dismissal provided that the above-captioned adversary proceeding between Freishtat and Ms. Blair would remain open. A plan was never confirmed in the Chapter 13 bankruptcy case of Shirley Blair.

One of the principal assets scheduled by Blair Temps in its Chapter 11 case was a cause of action against the law firm of Shaw Pittman, LLP (hereinafter, "Shaw Pittman") asserting legal malpractice in the representation of Blair Temps in a dispute with Blair Temps' primary asset-based lender, Classical Financial Services, LLC (hereinafter, "Classical").[2] On September 17, 1999, in the Blair Temps Chapter 11 case, Trustee Nesse filed an application to employ David Freishtat and the law firm of Freishtat and Sandler to represent the Chapter 11 estate in bringing the malpractice action against Shaw Pittman (hereinafter, the "Shaw Pittman Litigation").[3] The application provided that Fre-

---

1. The complaints instituting the above-captioned adversary proceedings were filed against the respective Debtors in each of the two captioned bankruptcy cases. The complaints seek the same relief against the respective Defendants.

2. The Schedules filed in the Blair Temps case were signed under oath by Shirley Blair, President of Blair Temps.

3. Subsequent to the engagement by Trustee Nesse, the law firm changed its name to Freishtat, Burke, Mullen & Dubnow, LLC.

ishtat "will be paid on the terms of a 40% contingent fee and will advance all costs associated with its representation, including investigative costs, expert witness fees and the like." No opposition to the application was filed with the court. On October 18, 1999, an Order approving the engagement of Freishtat on these terms was entered by the court in the Blair Temps case.

No cause of action against Shaw Pittman was scheduled as an asset by Shirley Blair in the original schedules filed in her Chapter 13 case. Nor was a cause of action against Shaw Pittman scheduled on the Amended Schedules B and C filed by Ms. Blair on February 16, 2000 and no application to employ special counsel was filed by the Debtor, Ms. Blair.[4] Moreover, no notice of appearance was filed by Freishtat as special counsel to Shirley Blair for the Shaw Pittman Litigation and no disclosure of fee as required by Federal Rule of Bankruptcy Procedure 2016(b) was filed in the Chapter 13 case by Freishtat. Nor did counsel of record in the Chapter 13 case, Donna Williams Rucker, Esquire, file any document alluding to, or noticing that Freishtat had been engaged to represent any interests of Ms. Blair in the Shaw Pittman Litigation. In fact, the affidavit of disinterestedness filed in support of the Trustee's application to employ Freishtat in the Blair Temps case clearly provided that Freishtat would be representing Trustee Nesse in the Shaw Pittman Litigation. On December 20, 2002, however, Ms. Blair filed a Second Amended Schedule B and

Schedule C in her Chapter 13 case. The Second Amended Schedule B includes a contingent and unliquidated claim entitled *"Blair v. Shaw Pittman"* in the amount of $8,000,000.00 and another contingent and unliquidated claim entitled *"Blair v. Freishtat"* in the amount of $7,000,000.00.[5] Nevertheless, nowhere in the record of the Chapter 13 case of Ms. Blair is there any indication that Freishtat was retained to represent the individual interests of Ms. Blair in the Shaw Pittman Litigation.

On November 19, 1999, a complaint was filed by Freishtat in the United States District Court for the District of Columbia on behalf of Janet Nesse, Bankruptcy Trustee for Blair Temps, instituting the Shaw Pittman Litigation. According to the record presented to this court, no amendment to that complaint was filed adding Shirley Blair as a Plaintiff, nor was any motion to intervene or other pleading filed in the action on behalf of Shirley Blair, individually, or as debtor in her Chapter 13 case.

After two years of litigation, the parties to the Shaw Pittman Litigation reached a settlement. An interim Memorandum of Agreement memorializing the terms of the settlement was signed by Shaw Pittman, Trustee Nesse and Ms. Blair, individually, on April 23, 2002. The interim agreement was subject to a final Release and Settlement Agreement to be executed. The final settlement agreement was executed on April 26, 2002 by Trustee Nesse and on April 29, 2002 by Ms. Blair.[6]

**4.** In a Chapter 13 case, the debtor retains possession of the bankruptcy estate's assets and therefore, may prosecute causes of action owned by the debtor pre-petition, which causes of action become estate property upon the filing of the bankruptcy case. 11 U.S.C. § 541.

**5.** The Second Amended Schedule B was filed one month after a malpractice action was

commenced by Shirley Blair against attorney Freishtat and his law firm (see *supra* pp. 423–24 and note 3) asserting rights not previously alleged in any filing in this court.

**6.** Freishtat's Motion for Summary Judgment states that Ms. Blair executed the final settlement agreement on April 29, 2002 and had her individual signature notarized on April 30, 2002. However, the copy of the final

On May 6, 2002, a Motion for Approval of Settlement and Payment of Legal Fees Pursuant to Bankruptcy Rule 9019 (the "Settlement Motion") was filed in the Blair Temps bankruptcy case.[7] The Settlement Motion states that Trustee Nesse obtained a settlement of the Shaw Pittman Litigation that will allow payment in full to all creditors of the Blair Temps bankruptcy estate. Specifically, the Settlement Motion recites that Shaw Pittman offered and Trustee Nesse agreed to accept for the bankruptcy estate of Blair Temps the sum of Sixteen Million Eight Hundred Twenty Five Dollars ($16,825,000.00) in settlement of all claims of malpractice brought in the action in the United States District Court for the District of Columbia. The Settlement Motion further states that "the principal of the Debtor, her personal attorney, and corporate counsel for the Chapter 11 Debtor are all fully apprised of the Settlement and aware of its terms."

The Settlement Motion also addressed the legal fees to be paid to Freishtat. Specifically, paragraphs five of the Settlement Motion recites that the court approved the retention of Freishtat based upon a contingency fee of 40% of the recovery plus reimbursement for all costs. Paragraph six states that the out-of-pocket expenses advanced by Freishtat in connection with the Shaw Pittman Litigation were "well in excess of $1 million."

The Settlement Motion was also filed in the Chapter 13 case of Ms. Blair, to which a response was filed on behalf of Ms. Blair by Donna Williams Rucker, Esquire. The response asserted that Ms. Blair did not believe that the Freishtat fee approved by the court was 40% of the recovery *plus* reimbursement for all costs and further asserted that the costs advanced by Freishtat of over $1 million were unreasonable. While the response admitted that a settlement was reached with Shaw Pittman and that Ms. Blair executed the settlement agreement, it also stated that "... the Debtor did not waive her right to be a Plaintiff in that case during the course of the litigation and, would have desired to be a Plaintiff in the case." Lastly, the response stated that Ms. Blair's counsel was not made aware of the terms of the settlement agreement until after it occurred. The response filed by Ms. Blair did not challenge the specific terms of the settlement agreement nor did it challenge the adequacy of Freishtat's representation of Blair Temps.

On July 30, 2002, Trustee Nesse filed Amended Motions for Approval of Settlement Pursuant to Bankruptcy Rule 9019 (the "Amended Settlement Motions"). The Amended Settlement Motions were filed in the Chapter 11 and Chapter 13 cases. On August 9, 2002, Ms. Blair filed a response to the Amended Settlement Motion in her Chapter 13 case. Ms. Blair's response to the Amended Settlement Motion contained only admit/deny statements. Specifically, Ms. Blair admitted the allegations contained in the Amended Settlement Motion except for paragraph five, where she denied that the terms of Freishtat's fee was 40% of the recovery plus reimbursement for all costs, and paragraphs six, seven and thirteen,

---

settlement agreement attached as Exhibit 3 to the Complaint for Declaratory Relief only contains the undated and unnotarized signature of Ms. Blair. Nevertheless, Ms. Blair concedes that she, Trustee Nesse and Shaw Pittman executed the final settlement agreement on or about April 26, 2002.

7. This is a requirement of law arising as a result of the operation of 11 U.S.C. § 363(b) and Federal Rule of Bankruptcy Procedure 9019.

which Ms. Blair neither admitted nor denied for lack of sufficient information.[8]

A hearing was held on August 19, 2002 to consider the Amended Settlement Motions at which Ms. Blair and her counsel, Donna Williams Rucker, were present. At the hearing, Ms. Blair was provided with the opportunity to raise objections to the Amended Settlement Motions; however, no objections were raised. In fact, Ms. Rucker expressly stated that Ms. Blair was not objecting to the terms of the settlement agreement.[9] On August 23, 2002, Orders granting the Amended Settlement Motions were entered in the Chapter 11 and Chapter 13 cases.

From the $16,825,000.00 received from the settlement with Shaw Pittman, Trustee Nesse has distributed approximately $441,913.91 to Ms. Blair on account of a claim for administrative expense filed by Ms. Blair in the Blair Temps case. Additionally, under the terms of the confirmed plan in the Blair Temps case, Ms. Blair, as the sole shareholder of Blair Temps, will receive the rest and residuary of assets of the estate after distribution to creditors.[10]

8. Paragraph six of the Amended Settlement Motion states that Freishtat actively pursued the Shaw Pittman Litigation for over two years, paragraph seven states that Trustee Nesse obtained a settlement of the Shaw Pittman Litigation and although Ms. Blair was not a Plaintiff in the litigation, she is waiving any claims that she may have against Shaw Pittman and further states that the Settlement Agreement requires court approval in Ms. Blair's Chapter 13 case and paragraph thirteen provides that Trustee Nesse submits that the settlement and waiver of potential claims is in the best interests of the creditors in Ms. Blair's Chapter 13 case because Ms. Blair is a creditor of Blair Temps and will receive a distribution from the settlement proceeds that can be used as a source of funding in Ms. Blair's Chapter 13 case.

9. At the hearing held on August 19, 2002, when asked if Ms. Blair was objecting to the terms of the Shaw Pittman settlement, the following response was offered to the court by Ms. Rucker:

MS. RUCKER: Your Honor, originally Ms. Blair's position was that the agreement itself was signed by her personally, which would in effect relate to her personal bankruptcy case at the time when she was not aware of the specific terms concerning her personally. Mainly, she was not represented by counsel at the initial signing and also with respect to information she believed that she had learned was no [sic] so, namely that the award that was being given at the time would not be taxable.

She believed that the award, the $16,825,000 was going to be tax-free aware [sic] at the time of the original settlement that we had in this case.

THE COURT: Ms. Rucker, would you please come to the podium where I can hear you better and make sure the record is clear? I have a few questions.

MS. RUCKER: Very well. Shall I repeat, Your Honor?

THE COURT: No. My question is simply this: today, in court as we are today, does Ms. Blair object to the approval of the settlement of the litigation with Shaw–Pittman, other than perhaps to the extent that she obviously objects to the application for compensation of special counsel?

MS. RUCKER: I believe at this juncture, Your Honor, Ms. Blair is not objecting to the terms of the agreement, notwithstanding what the Court has indicated. The fees.

THE COURT: All right. So on the record today, you are stating that as to the settlement, Ms. Blair's only objection is as to the amount to be paid special counsel?

MS. RUCKER: With the Court's indulgence, I'd just like to check one thing, Your Honor.

THE COURT: Very well.

MS. RUCKER: Thank you for your indulgence, Your Honor. That is correct, Ms. Blair is not objecting to the settlement terms itself.

(Tr. of 8/19/02 Hr'g at 5:20–6:19.)

10. On April 15, 2003, a second request for administrative expenses in the amount of $150,000.00 was filed by Ms. Blair in the Blair Temps case. On October 3, 2003, an Order Granting Request for Payment of Administrative Expense was entered by the

On June 13, 2002, prior to this court's approving the Amended Settlement Motions filed in the Chapter 11 and Chapter 13 cases, Freishtat filed an Application for Approval of Legal Fees and Reimbursement of Advanced Costs and Expert Fees for Freishtat (the "Application for Legal Fees").[11] An opposition to the Application for Legal Fees was filed by Debtor, Blair Temps.[12] The opposition raises three issues and asserts, in part:

"On September 17, 1999, the Chapter 11 Trustee filed an Application to Authorize Retention of Special Counsel for the Trustee (the "Application to Retain Special Counsel") to retain David Freishtat and Freishtat and Sandler to represent the Debtor in a lawsuit against Shaw Pittman, Potts & Trowbridge ("Shaw Pittman")...."

"Chapter 11 Trustee's application to retain Special Counsel was based on a letter agreement dated September 2, 1999 between the Chapter 11 Trustee and F & S, which similarly states 'subject to court approval, [F & S] is willing to represent you as trustee ... upon a 40% contingent fee.' The letter further states that F & S will advance all necessary out of pocket expenses on behalf of the Debtor..."

The three issues raised in the opposition were: I) that this court did not approve a 40% contingency fee plus reimbursement of expenses; ii) that Freishtat violated Rule 1.5(c) of the Maryland Rules of Professional Conduct by not stating in the engagement agreement that expenses were to be reimbursed in addition to the contingency fee; and iii) that the Application for Legal Fees did not contain sufficient information for the court to make a determination that the expenses for which reimbursement is sought were reasonable.[13]

court, however, the payment has not yet been disbursed by Trustee Nesse.

11. The application sought approval of legal fee in the amount of $6,730,000.00 (calculated at 40% of the gross recovery of $16,825,000.00). In addition, the application sought reimbursement of expenses in the amount of $1,741,716.00 for costs advanced by Freishtat in connection with the Shaw Pittman litigation.

12. On May 24, 2002, Freishtat filed a motion to file his Application for Legal Fees under seal, in response to which several parties filed objections. Subsequently, on June 13, 2002, Freishtat filed the Application for Legal Fees without a seal. The court notes that the opposition to the Application for Legal Fees filed on behalf of Blair Temps was filed with the court on June 4, 2002, before the Application itself was filed without seal. The court assumes that Blair Temps and/or Ms. Blair received a copy of the Application for Legal Fees prior to its submission to the court on June 13, 2002.

13. On July 11, 2002, an amended opposition to the Application for Legal Fees was filed by Shirley Blair, on behalf of Debtor, Blair Temps. The amended opposition raises the same three issues as the original opposition; however, an affidavit of Shirley Blair is attached as Exhibit 1 to the amended opposition. Paragraphs three through seventeen of the affidavit concern Freishtat's contingency fee arrangement and the reasonableness of expenses associated with the Shaw Pittman Litigation. (Blair Aff. ¶¶ 3–17). Paragraph 15 of the affidavit specifically challenges certain expenses for which reimbursement was sought by Freishtat. (*Id.* at ¶ 15). Beginning with Paragraph 18 of the affidavit, Ms. Blair raises several concerns with the Shaw Pittman Settlement Agreement. Paragraphs 19 and 20 concern the tax implications of the Settlement Agreement. (*Id.* at ¶¶ 19–20). Paragraph 21 states:

After the settlement was reached, I learned that I was not a party to that litigation in my individual capacity. This was due to F & S' determination that I had a "weak claim". However, I was not told of the potential to join the lawsuit while the case was pending and did not waive, prior to this matter settling, my personal claims. I was at the settlement conference and nei-

The initial hearing upon the Application for Legal Fees took place on August 19, 2002 (at the same hearing where the court considered the Amended Shaw Pittman Settlement Motions). Continued hearings on the Application for Legal Fees were subsequently held on October 30, 2002 and January 8, 2003.[14] The contested issues related solely to whether the reimbursement of expenses was to be paid to Freishtat in addition to the contingency fee and whether such expenses were reasonable. At no time was the quality of Freishtat's representation of Blair Temps throughout the Shaw Pittman Litigation challenged by either Blair Temps or Ms. Blair. At the hearing held on January 8, 2003, the parties requested that the matter be continued to allow for an opportunity to seek mediation. United States Magistrate Judge Charles B. Day graciously agreed to the parties' request to act as a mediator. Nevertheless, the mediation was unsuccessful and the fourth and final day of hearings on the Application for Legal Fees took place on September 29, 2003.

At the beginning of the final hearing on the Application for Legal Fees, the following colloquy took place with Sunanda Holmes, counsel for Blair Temps:

> THE COURT: This is the continued hearing on the application for compensation by special counsel. The hearing so far has taken part of three days and there has been about a eight-month or so period of time since the last hearing during which the parties availed themselves of ADR, but unfortunately unsuccessfully.
>
> Anything preliminarily before we recommence? Very well. According to the Court's notes, the time that—
>
> MS. HOLMES: Your Honor—
>
> THE COURT: Ms. Holmes, I'm sorry.
>
> MS. HOLMES: I just wanted to find out whether there was a motion to consolidate that was pending before the Court that was filed by Donald Temple's law firm, and I didn't know if Your Honor had a—
>
> THE COURT: There was a motion to consolidate?
>
> MS. HOLMES: Yes, Your Honor. There—as Your Honor may know, there is an adversarial proceeding against Freishtat and Sandler before this court as well, and there was a motion filed asking that this court consolidate this matter with the adversarial proceeding."
>
> THE COURT: I don't believe—now, let me not speak rashly. There was an order entered denying a motion for continuance.
>
> MS. HOLMES: Yes, Your Honor. That is correct.

ther BLAIR'S corporate attorney, Sunanda K. Holmes, nor my personal Bankruptcy attorney, Donna W. Rucker, was present. When the settlement was reached, I was told that my signature was required and I remained to sign the document, which was prepared by laptops after terms were agreed upon. I did sign a release at the settlement conference releasing all personal claims. I believed that the settlement was in consideration of my claims and that of my company. However, I am now told that I do not have any personal interest in the settlement funds received.
(*Id.* at ¶ 21). Paragraph 22 of the affidavit states:

I was required to sign the settlement agreement waiving my personal claims against Shaw Pittman, even though I was not made a party to the lawsuit against Shaw Pittman. I was asked to sign the document personally and did not have the benefit of any legal counsel. During the entire course of the litigation, I was told not to pursue any claims against any other individual entity.
(*Id.* at ¶ 22).

14. The parties initially estimated that the hearing on the Application for Legal Fees would take two hours. Instead, the hearing was held over a period of four days.

THE COURT: That was entered—that order has been entered denying that motion. Is that what you're speaking to?

MS. HOLMES: No, Your Honor. I'm—I'm talking about a motion to consolidate the current proceedings with the adversarial proceeding that's pending before the Court. My motion for continuance was based on that motion, stating that because there's a motion to consolidate pending that this matter should be consolidated with the other proceeding that—

THE COURT: When was the motion to consolidate filed, please? Here it is.

MS. HOLMES: I believe Monday, September—

THE COURT: September the 22nd.

MS. HOLMES: Yes, Your Honor.

THE COURT: The Court has not acted on the motion. Do you wish the Court to consider it as a preliminary matter today?

MS. HOLMES: Yes, Your Honor.

THE COURT: Well, given the length of time that's expired and the amount of testimony and other evidence that's come in in this application, on what basis would the court now consolidate this into an adversarial proceeding which has not yet reached an evidentiary phase, if my memory serves me correctly?

MS. HOLMES: Yes, Your Honor. The—the issue is that the proceedings that's ongoing here is crucial to the allegations that's been raised by Ms. Blair in her in the adversarial proceeding.

And, in fact, all of the filings, the exhibits that the—that special counsel, through his counsel, has filed before this court in response to the motion for—in—in response to the adversarial proceeding attach all of the proceeding that's been ongoing in this court so that clearly that the fact of this case is clearly related to that—those proceedings.

And—and, in fact, they're using the rulings in this court as a basis for res judicata on those proceedings that's before the Court.

THE COURT: Well, they may or may not be a basis for a preclusive effect, whether it's res judicata or collateral estoppel or some other doctrine of preclusion . . . . . .

(Tr. of 9/29/03 Hr'g at 4:13–7:40).

Upon hearing further from Ms. Holmes and then from Mr. Freishtat, the court denied the motion to consolidate as part of the following colloquy: [15]

**15.** A subsequent examination of the records of this case and related adversary proceedings discloses that the motion to consolidate Freishtat's Application for Legal Fees with an adversary proceeding could not have been granted because the adversary proceeding described by attorney Holmes *did not exist.* The docket report in the case of Blair Temps reflects that a motion to consolidate was filed by Ms. Holmes on behalf of Blair Temps on September 22, 2003 requesting consolidation of the objection of Blair Temps to the Third and Final Application for Compensation of Trustee's Counsel (which application was filed by Trustee Nesse's general counsel, Stinson, Morrison & Hecker, LLC, for work performed in the bankruptcy case) with an adversary proceeding commenced on September 23, 2003 by Blair Temps and Shirley Blair, individually, against Trustee Nesse. Upon subsequent review of the motion to consolidate, it became clear to the court that the motion to consolidate was not related to Freishtat's Application for Legal Fees, which was the subject of the hearing on September 29, 2003. Additionally, the court notes that the motion to continue referenced by Ms. Holmes at the September 29, 2003 hearing as being related to the motion to consolidate was filed by Ms. Holmes on behalf of Shirley Blair on September 22, 2003. Said motion to continue requests a continuance of a hearing scheduled for September 22, 2003 on the Third and Final Application for Compensation of Trustee's Counsel, Stinson, Morrison & Hecker,

THE COURT: The Court will deny the motion to consolidate these matters for two reasons. First is I believe that the timing of the motion is unfairly prejudicial to the applicant and is, in effect, so late into this evidentiary trial as to cause it to be inappropriate.

Secondly, I see no advantage or disadvantage being afforded to either party, and only some real confusion and delay by granting the motion. The applicant, some significant time ago, filed the application to be allowed compensation. The hearings in this matter commenced and despite counsel's optimistic prediction of how—how much time would be needed, constantly had to be carried over to new dates so that now we are in the fourth part of a day to hear evidence. There's been no restriction on the evidence and any part of evidence that needs to be put forward, there has been or will be put forward by the parties as they deem appropriate. Then the Court will decide the matter. If this has an effect on some other matter that was started subsequent, so be it. I do not know and I do not judge that today. But I don't see where some party has been unfairly restricted in presenting something to the Court in this application process. Quite to the contrary, the Court has, so far, allowed something like four times the amount of hearing time that originally had been asked for by the parties, and yet we are to start again today. So I think that the parties have had ample opportunity to make the record and will have the opportunities to complete that and then the Court will have to make its decision, and that's what this application process demands. For that reason, the motion to consolidate is denied.

MS. HOLMES: Your—Your Honor?

THE COURT: Hm-hmm?

MS. HOLMES: Well, Your Honor, the last time we were before Your Honor when we were to go to settlement discussions, Your Honor has stated that you would send this matter to arbitra-

LLC. Again, this is a different matter than the issue of Freishtat's legal fees.

The court further notes that on September 26, 2003, Ms. Holmes filed (on behalf of Shirley Blair) a motion to continue the hearing set for September 29, 2003 on Freishtat's Application for Legal Fees. This motion to continue, which was denied by the court on September 29, 2003, states that "a motion to consolidate was filed in the matter of *Shirley Blair v. Freishtat and Sandler, et. al.*, on September 23, 2003 before this court. That adversary proceeding is also currently pending before this Court." The motion to continue goes on to state that "Shirley Blair has retained other counsel to represent her and Blair Temporaries & Staffing in an adversary matter that was filed with this Court on November 22, 2002." Accordingly, the motion to continue requests that the court consolidate the objection of Blair Temps to Freishtat's Application for Legal Fees with the adversary proceeding entitled *Shirley Blair v. Freishtat and Sandler, et al.*

A review of the filings in the Chapter 11 and Chapter 13 cases and the related adversary proceedings reflects *no such adversary proceeding* was commenced in this court on November 22, 2002, or on any other date, by Shirley Blair against Freishtat & Sandler, et. al.. Rather, the "adversary proceeding" referenced in the motion to continue is actually a legal malpractice complaint filed in the Superior Court of the District of Columbia on November 20, 2002 by Shirley Blair against David Freishtat and Freishtat & Sandler. The four-count complaint asserts legal malpractice/breach of fiduciary duty, breach of contract, negligent misrepresentation and fraudulent misrepresentation against Freishtat & Sandler and David Freishtat. No basis is asserted in the motion to continue the September 29, 2003 hearing for the consolidation of an action brought in another court with an objection to an application for legal fees filed in the bankruptcy proceeding. It appears that Ms. Holmes confused the various actions between the parties when she addressed the court at the September 29, 2003 hearing.

tion if the parties could not resolve it through negotiation.

THE COURT: I do believe that alternate dispution resolution occurred with the assistance of Magistrate Judge Day. Am I not correct?

MS. HOLMES: Yes, Your Honor. We did go to settlement discussion.

THE COURT: And I believe that it was reported to me that the parties were unable to resolve the dispute. So it appears that the ADR has occurred, but been unsuccessful.

MS. HOLMES: That is—that is correct. Well, it's not arbitration, but the second request that we have, Your Honor, is whether Your Honor would reserve ruling.

THE COURT: Well, it depends where we are at the end of the evidence and the argument. Now, where we left off was that the applicant had completed all evidence in the applicant's case. So at this time I turn to the objecting party and ask you to begin with your evidence.

MS. HOLMES: Your Honor, we will close. We rest our case.

THE COURT: You are not going to present any evidence?

MS. HOLMES: No, Your Honor.

(*Id.* at 10:12–12:25).

After approximately a ten-minute recess, the hearing on the Application for Legal Fees resumed and Freishtat went forward with the hearing solely upon the issue of whether his expenses were to be deducted from the contingency fee or reimbursed in addition to the contingency fee. At the conclusion of the hearing, the court orally ruled that Freishtat was entitled to reimbursement of the full amount of expenses in addition to the 40% contingency fee. On November 4, 2003, an Order allowing Freishtat's application, in full, was entered. The Order allowing the Application for Legal Fees was subsequently appealed to the United States District Court for the District of Maryland by Blair Temps, however, on December 5, 2003, Ms. Holmes filed a voluntary dismissal of the appeal on behalf of Blair Temps.

On November 20, 2002, during the pendency of the hearings on Freishtat's Application for Legal Fees and nearly three months after the entry of the Order granting the Trustee's Amended Settlement Motion with Shaw Pittman, Shirley Blair commenced the aforementioned malpractice action against David Freishtat and Freishtat & Sandler in the Superior Court of the District of Columbia (the "Malpractice Action"). Count I of the four-count complaint alleges legal malpractice and breach of fiduciary duty, Count II alleges breach of contract, Count III alleges negligent misrepresentation and Count IV alleges fraudulent misrepresentation. The complaint challenges the quality of service rendered by Freishtat in connection with the Shaw Pittman Litigation. More specifically, the complaint states that Freishtat represented both Blair Temps and Ms. Blair, individually, in the Shaw Pittman Litigation and alleges that Freishtat failed to appropriately advise Ms. Blair of the terms and tax implications of the settlement.[16] In the complaint, Ms. Blair argues, among other things, that the Shaw Pittman Settlement Agreement was unfair in that it did not address Ms. Blair's individual rights in the litigation. Additionally, Ms. Blair alleges that Freishtat presented an erroneous and misleading expert report on the economic damages sustained by Blair Temps due to Shaw Pittman's

---

**16.** Paragraph 9 of the Superior Court complaint states: "At all times referenced herein, Defendants and Plaintiff entered into an agreement, whereupon Defendants agreed to represent Plaintiff's personal interest against Shaw Pittman."

alleged malpractice and that Freishtat induced Ms. Blair to sign the Shaw Pittman Settlement Agreement. Upon notice by the Defendants, the Malpractice Action was removed to the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1334(b) where it currently is pending (and stayed pending the resolution of the instant adversary proceedings).[17]

In response to the commencement of the Malpractice Action, Freishtat commenced the above-captioned declaratory actions on February 19, 2003. Count I of the complaints seek a determination that Ms. Blair is barred from taking a position in the Malpractice Action that is different from her position in this court and Count II seeks a determination that the Malpractice Action is barred by the doctrines of collateral estoppel and *res judicata*. Essentially, Freishtat argues that Shirley Blair, individually, and Blair Temps are precluded by the doctrines of judicial estoppel from bringing any malpractice claims against Freishtat (whose employment was approved by this court and whose fees were also approved by this court) for services rendered in Freishtat's capacity as special counsel to the Chapter 11 Trustee in the bankruptcy case of Blair Temps. The complaints argue that the claims alleged by Ms. Blair in the Malpractice Action "are completely inconsistent with proceedings, positions and decisions made by this Court in the administration of Debtors' bankruptcy estates and therefore are barred by the doctrines of judicial estoppel, *res judicata* and collateral estoppel." Accordingly, the complaints ask this court to declare that the Malpractice Action commenced by Ms. Blair is barred under various preclusion doctrines. Ms. Blair and Blair Temps filed a double-captioned answer to the complaints for declaratory relief and soon thereafter, Freishtat filed motions for summary judgment.

After an initial hearing upon the motions for summary judgment held on December 1, 2003, the court denied the motions without prejudice, deferring to the United States District Court for the District of Columbia for a determination in the Malpractice Action. However, upon motion for reconsideration filed by Freishtat and after reviewing an Order of the United States District Court for the District of Columbia attached thereto, this court granted the motion to reconsider and reset a hearing on the merits of the motions for summary judgment.[18] On June 22, 2004, a hearing was held upon the motions for summary judgment and the court took the matters under advisement.

### ISSUE

The issue on which summary judgment is sought is whether Shirley Blair, individually, is precluded by the doctrines of *res judicata* and judicial estoppel from bringing any malpractice claims against Freishtat for facts and matters arising out of the services rendered in connection with the Shaw Pittman Litigation? For the following reasons, the court determines that

---

**17.** Freishtat filed a Complaint for Declaratory Relief in the Chapter 13 bankruptcy case of Shirley Blair and in bankruptcy case of Blair Temps, Adversary Proceeding Numbers 03–01065 and 03–01066, respectively. The complaints seek the same declaratory relief.

**18.** The Order entered by the United States District Court for the District of Columbia on May 8, 2003 provides, in part:

ORDERED, that all proceedings in this case are stayed until the United States Bankruptcy Court for the District of Maryland rules upon the Complaint for Declaratory Relief currently pending in the matters styled as *In re Shirley Blair*, Chapter 13 Case No. 99–20539–DK and *In re: Blair Temporaries and Staffing, Inc.*, Chapter 11 Case No. 99–1–5565–DK (collectively, the "Maryland bankruptcy actions").

summary judgment is proper and that Ms. Blair is barred from asserting claims of malpractice against Freishtat.

### SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 7056, summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 883–84, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990); *Sylvia Dev. Corp. v. Calvert County, Maryland*, 48 F.3d 810, 817 (4th Cir.1995). In considering a motion for summary judgment the court must view all permissible inferences in a light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Summary judgment is appropriate only if, taking the record as a whole, a rational trier of fact could not possibly return a verdict in favor of the non-moving party. *See id.; Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). To prevail on a motion for summary judgment, the moving party must establish the absence of genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the moving party carries its burden, the nonmoving party may not rest on the allegations in his or her pleading, but must produce sufficient evidence that demonstrates that a genuine issue exists for trial. *Id.* at 324, 106 S.Ct. 2548; *see also Young v. Federal Deposit Ins. Corp.*, 103 F.3d 1180, 1186 (4th Cir. 1997).

### ANALYSIS

■ In determining the preclusive effect of final orders, the test is what preclusive effect would be afforded by the court that entered the underlying judgment or order applying the law of the jurisdiction governing such underlying judgment or order. *Albano v. Norwest Financial Hawaii, Inc.*, 244 F.3d 1061, 1063 (9th Cir. 2001). The underlying Orders applicable to this case were entered by this court upon causes governed by the federal law set forth in the United States Bankruptcy Code.[19] Therefore, the applicable law governing the question of the preclusive effect of these Orders is the federal law as applied in the Fourth Judicial Circuit.

■ Under the principles of *res judicata*, "once a matter—whether a claim, an issue, or a fact—has been determined by a court as the basis for a judgment, a party against whom the claim, issue, or fact was resolved cannot relitigate the matter." *In re Microsoft Corp. Antitrust Litigation*, 355 F.3d 322, 325 (4th Cir.2004). As the Fourth Circuit Court of Appeals has noted, "judicial efficiency and finality have demanded such a policy." *Id.* Such later claim is precluded when: 1) the prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; 2) the parties are identical, or in privity, in the two actions; and 3) the claim in the second matter is based upon the same cause of action involved in the earlier proceeding. *See Grausz v. Englander*, 321 F.3d 467, 472 (4th Cir.2003)(*citing In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir.1996)).

In *Grausz v. Englander*, a former Chapter 11 debtor filed a legal malpractice action in Maryland state court against the

---

**19.** The Amended Settlement Motions were granted pursuant to 11 U.S.C. § 363(b) and the Application for Legal Fees was granted pursuant to 11 U.S.C. § 330.

law firm that represented him in his bankruptcy case. The defendant law firm removed the malpractice action to the United States District Court for the District of Maryland and soon thereafter, filed a motion to dismiss or, in the alternative, motion for summary judgment on the grounds that under *res judicata* principles, the bankruptcy court's final fee order approving the law firm's fees barred a subsequent malpractice claim. *Id.* at 471. After conducting a hearing on the motion for summary judgment, the District Court ruled from the bench that principles of res judicata barred the malpractice claim. An Order granting the motion for summary judgment was entered and the debtor appealed the Order. On appeal, the United States Court of Appeals for the Fourth Circuit affirmed the Order of the District Court barring the malpractice action on grounds of *res judicata.*

In *Grausz,* the first element of res judicata was not contested. The parties agreed that the bankruptcy court's final fee order approving the law firm's second and final fee application was a final judgment on the merits. *Id.* As to the second element, the debtor argued that he was not a party in interest to the fee application proceeding because at that point in his bankruptcy case, a trustee had been appointed to administer the bankruptcy estate. The Fourth Circuit rejected this argument and held that a "party in interest" in the bankruptcy context "is one who has a pecuniary interest in the distribution of assets to creditors." *Id.* at 472–473. The Court reasoned that if the law firm's legal fees were reduced or disallowed, there would be more money in the estate to pay the nondischargeable priority claims, thereby reducing the debtor's personal liability. *Id.* Accordingly, the Court determined the debtor to be a party in interest and found "an identity of parties in the fee proceeding and the malpractice case." *Id.*

The third element of res judicata was addressed by the *Grausz* Court at some length. The Fourth Circuit recognized that while no simple test exists to determine whether claims are based on the "same cause of action" for preclusion purposes, generally, claims are considered part of the "same cause of action when they arise out of the same transaction or series of transactions, or the same core of operative facts." *Id.* at 473 (*citing Varat,* 81 F.3d at 1316). The "core of operative facts" identified in *Grausz* were the same in the fee application proceeding and the malpractice action, i.e., both actions related to the nature and quality of legal services provided to the debtor by the defendant law firm in connection with the bankruptcy case. *Id.* When making a determination on the firm's fee application in the bankruptcy case, the bankruptcy court was required "to consider the nature, the extent, and the value of such services" before awarding fees pursuant to 11 U.S.C. § 330(a)(3). *Id.*; 11 U.S.C. § 330(a)(3). The Fourth Circuit reasoned that by granting the law firm's fee application, the bankruptcy court impliedly found that the firm's services were acceptable throughout its representation of the debtor. *Id.* Consequently, the third element for claim preclusion was met.

In addition to addressing the three elements of claim preclusion, the *Grausz* Opinion provides an analysis of whether 1) the debtor knew or should have known before the conclusion of the fee application proceedings whether a malpractice claim was likely and 2) whether the fee proceeding in the bankruptcy court provided the debtor with an effective forum to litigate his malpractice claim. *Id.* at 474. The Fourth Circuit answered both questions in the affirmative and stated that the debtor could have objected to the law firm's fee application and "included with his objec-

tion a claim for affirmative relief on account of the firm's alleged malpractice." *Id.* The Fourth Circuit concluded its Opinion by stating that if the debtor could pursue a malpractice claim and obtain a judgment after the final fee order was entered, such judgment would undermine the validity of the fee order and would further undermine the "fundamental purposes of the doctrine of res judicata: 'preventing inconsistent decisions, [and] encourag[ing] reliance on adjudication.'" *Id.* at 475 (*quoting Bay State HMO Mgmt., Inc. v. Tingley Sys., Inc.,* 181 F.3d 174, 181 (1st Cir.1999)).

The facts of the instant case as set forth in this Memorandum of Decision are similar to the facts in *Grausz v. Englander.* In fact, the facts and procedural posture of this case establish two grounds on which summary judgment may be granted based upon the doctrine of *res judicata.* The first is this court's approval of Freishtat's 40% ˚contingency fee on August 29, 2002 and the second is this court's approval of the Shaw Pittman Settlement Agreement, as reflected in Orders entered in the Chapter 11 Blair Temps case and the Chapter 13 case of Ms. Blair on August 23, 2002. The court will address the implications of the Order approving Freishtat's 40% contingency fee first.

At the hearing held to consider Freishtat's motions for summary judgment, counsel for Blair Temps and Shirley Blair conceded that under the reasoning of *Grausz v. Englander,* 321 F.3d 467 (4th Cir.2003), Freishtat's motions for summary judgment were meritorious as to any malpractice claims of Blair Temps against Freishtat as a consequence of the final Order approving Freishtat's Application for Legal Fees. (Tr. of 6/21/04 Hr'g at

15:1–7). However defendants argued that summary judgment was not appropriate as to the asserted rights of Shirley Blair against Freishtat. In her opposition to Freishtat's motion for summary judgment, Ms. Blair argues that *res judicata* does not bar the Malpractice Action because she was not a party to the fee arrangement between Trustee Nesse and Freishtat. Ms. Blair states that the objections she raised to the Application for Legal Fees were as president of Blair Temps and ˈwere not her personal objections.[20] Moreover, Ms. Blair states that the Order entered on August 28, 2002 was only an interim order subject to further review and adjustment, therefore, the first element or *res judicata* cannot be met. For the following reasons, the court disagrees with Ms. Blair's assertions.

█ First, the court determines that the Order entered on August 29, 2002 is a "final order" under the circumstances of this case. "The question of whether a particular order granting compensation is interlocutory or final necessarily depends upon the circumstances of the case." *In re Dahlquist,* 751 F.2d 295, 297 (8th Cir. 1985). Here, while the Order only granted partial relief, it was a final Order as to the 40% contingency fee to be received by Freishtat. The Order resolved all of the issues pertaining to the 40% contingency fee and the only remaining issue to be determined was whether the 40% included the reimbursement of expenses or whether expenses would be reimbursed in addition to the contingency fee. Furthermore, the Order Allowing Final Payment of Reimbursement of Expenses to Freishtat entered on November 4, 2003 concluded all matters relating to Freishtat's Application for Legal Fees and is undisputably a "final

**20.** The opposition to Freishtat's Application for Legal Fees filed by Ms. Blair on behalf of Blair Temps is entitled: "Shirley Blair's Op-position To Special Counsel's Application For Approval Of Legal Fees And Reimbursement Of Advanced Costs And Expert Fees."

order" for purposes of *res judicata*. In fact, this Order was appealed to the United States District Court for the District of Maryland by Ms. Blair, however, she subsequently withdrew the appeal.

■ Second, the court finds that there is sufficient identity of parties in the fee application proceedings and in the Malpractice Action. As already stated, Ms. Blair and her counsel participated in the hearing on August 19, 2002, at which the court considered Freishtat's Application for Legal Fees and opposition thereto. In fact, present at the hearing were Ms. Blair, her Chapter 13 counsel (Ms. Rucker) and Ms. Holmes, who also introduced herself to the court as representing Ms. Blair despite being counsel of record in the Blair Temps case.[21] As the sole shareholder of Blair Temps, Ms. Blair had a financial interest in the outcome of the hearing because a reduction in the fees received by Freishtat would mean more money available to the estate and, consequently, available to Ms. Blair upon satisfaction of the allowed claims of the estate. In fact, the court specifically determined that Ms.

Blair had standing to participate in the hearing on August 19, 2002 due to her pecuniary interest in the Blair Temps case.[22] While Ms. Blair argues that the amended opposition to the Application for Legal Fees was filed by Ms. Blair on behalf of Blair Temps, such a distinction does not change the fact that Ms. Blair, individually, had a pecuniary interest in the outcome of the fee application proceeding and as the Fourth Circuit determined in *Grausz*, such an interest made Ms. Blair a party in interest to such proceedings. Accordingly, the second element of *res judicata* is satisfied.

■ Third, the court finds that the proceedings related to the Application for Legal Fees and Ms. Blair's Malpractice Action arise out of the same "core of operative facts." Both proceedings relate to the nature and quality of legal services rendered by Freishtat in connection with the Shaw Pittman Litigation. Similar to the facts in *Grausz*, the August 19, 2002 hearing on Freishtat's Application for Legal Fees included an inquiry into the quality of service provided by Freishtat.

21. At the hearing, Sunanda Holmes introduced herself to the court as: "Sunanda Holmes, on behalf of Shirley Blair." *See* Tr. of 8/19/02 Hr'g at 4:17–18. Donna Rucker also entered her appearance on behalf of the debtor, Shirley Blair. *Id.* at 4:15–16.

22. At the August 19, 2002 hearing, Ms. Rucker stated that Ms. Blair had no objections to the terms of the Shaw Pittman Settlement Agreement. *Id.* at 7:1–3. Putting aside the issue of final approval of the Settlement Agreement, the court turned to Freishtat's Application for Legal Fees. At that point in the hearing, Trustee Nesse explained to the court that there was a disputed claim in the Blair Temps case that if determined to be in excess of $7 million, would result in insufficient funds to pay that claim, the administrative expenses, the priority claims and all of the other unsecured claims in the Blair Temps bankruptcy estate. *Id.* at 8:1–9:12. However, if the disputed claim was determined to be $4 million, then all allowed claims in the Blair Temps case would be paid in full and the surplus would be distributed to the sole shareholder of Blair Temps—Shirley Blair, for distribution to her Chapter 13 estate. *Id.* at 8:18–9:12. Accordingly, the court found that Ms. Blair had standing to object to Freishtat's Application for Legal Fees. *Id.* at 9:6–11. Ms. Holmes, representing Ms. Blair, then described Ms. Blair's objections to Freishtat's Application for Legal Fees, or more specifically, to the reimbursement of Freishtat's expenses in addition to the 40% contingency fee. *Id.* at 9:16–11:1. The hearing concluded with an agreement by the parties that Freishtat's Application for Legal Fees be partially approved as to the 40% contingency fee subject to a later determination as to whether such amount included the reimbursement of expenses. *Id.* at 95:9–96:2. Ms. Holmes specifically stated "I believe we have no objection, Your Honor." *Id.*

Ms. Blair was present at the hearing (and represented by counsel) and she did not oppose the entry of an Order granting the Application as to the contingency fee to be received by Freishtat. Again, as the sole shareholder of Blair Temps with a pecuniary interest in the outcome of the fee proceedings, Ms. Blair had standing to object to the quality of service provided by Freishtat, she actively participated at the hearing on August 19, 2002 and she chose not to object to the entry of an order granting the Application for Legal Fees as to the 40% contingency fee.[23] Accordingly, the court finds the third element of *res judicata* is satisfied.

■ Additionally, the court will address the considerations the Fourth Circuit addressed in *Grausz* concerning whether the debtor knew or should have known before the fee proceeding ended that a malpractice claim existed and whether the bankruptcy court provided an effective forum to litigate such a claim. In this case, the court finds that Ms. Blair knew or should have known of the likelihood of a malpractice claim against Freishtat by the time the hearing was held on August 19, 2002. Prior to that hearing, Ms. Blair filed an opposition on behalf of Blair Temps to the Application for Legal Fees and attached an affidavit to the opposition setting forth several concerns with the terms of the Shaw Pittman Settlement Agreement and the fees sought by Freishtat in connection with the Shaw Pittman Litigation. Clearly, by this point, Ms. Blair was unhappy with the settlement terms, or at least with the tax consequences thereof, as they related to her, individually. Moreover, Ms. Blair commenced the Malpractice Action

on November 20, 2002, just about three months after the Order approving Freishtat's contingency fee was entered and while the evidentiary trial on the reimbursement of Freishtat's expenses was still pending. As in *Grausz*, the court determines that Ms. Blair could have included in the opposition to the Application for Legal Fees any alleged claims of malpractice against Freishtat. Instead, at such time as Ms. Blair became unhappy with the results of the Shaw Pittman Settlement Agreement (including the taxability thereof), she decided to pursue malpractice claims against Freishtat in another forum. Such subsequent litigation directly contradicts the principles of *res judicata* as noted by the Fourth Circuit in *Grausz*, namely, judicial efficiency and finality.

■ A second basis for granting Freishtat's motion for summary judgment is based upon this court's approval of the Shaw Pittman Settlement Agreement, as evidenced by the Order Granting Amended Motion for Approval of Settlement entered on August 23, 2003. As already stated, the Amended Settlement Motion was filed in the Chapter 11 Blair Temps case and also in Ms. Blair's Chapter 13 case, to which Ms. Blair filed a response. As previously mentioned, the response to the Amended Settlement Motion filed by Ms. Blair contained primarily admit/deny statements; however, the response also provided that Ms. Blair had insufficient information to admit or deny that she waived any claims that she may have against Shaw Pittman and that the settlement and waiver of such potential claims was in the best interests of the creditors of her Chapter 13 estate.[24] Nevertheless, at the hearing held on Au-

---

**23.** In fact, the court notes that Ms. Blair continued to participate during the subsequent three additional days of trial upon Ms. Blair's objection to the reimbursement of Freishtat's expenses.

**24.** See Footnote 7, *supra*.

gust 19, 2002 to consider the Amended Settlement Motion, counsel for Ms. Blair (Ms. Rucker) stated that Ms. Blair had no objections to the terms of the Shaw Pittman Settlement Agreement, other than to the reimbursement of expenses sought by Freishtat. Soon thereafter, on August 23, 2002, Orders granting the Amended Settlement Motions were entered in the Chapter 11 Blair Temps case and in Ms. Blair's Chapter 13 case. For the following reasons, the court determines that the Shaw Pittman Settlement Agreement approved by the court is entitled to *res judicata* effect and bars the Malpractice Action commenced by Ms. Blair against Freishtat.

 "A bankruptcy court's approval of a settlement order that brings to an end litigation between parties is a 'final' order." *In re Gibraltar Resources, Inc.,* 210 F.3d 573, 576 (5th Cir.2000)(*citing In re Cajun Electric Power Coop., Inc.,* 119 F.3d 349, 354 (5th Cir.1997); *In re West Texas Marketing Corp.,* 12 F.3d 497, 501 (5th Cir.1994); *In re Medomak Canning,* 922 F.2d 895, 900 (1st Cir.1990)). Such final orders are appealable as of right pursuant to 28 U.S.C. § 158. *Id.* "A settlement agreement approved and embodied in a judgment by a court is 'entitled to full res judicata effect.'" *Id.* (*quoting West Texas Marketing,* 12 F.3d at 500). In this case, the Orders granting the Amended Settlement Motions brought an end to the Shaw Pittman Litigation and neither Blair Temps nor Ms. Blair appealed the Orders. Such Orders were final orders rendered by a court of competent jurisdiction, thus, the first element of *res judicata* is satisfied.

As with the Application for Legal Fees, the court finds that the parties to the Settlement Agreement and to the Malpractice Action are the same. Ms. Blair attended the initial settlement meeting and as part of the Settlement Agreement, she agreed to release all causes of action against Shaw Pittman. Additionally, the Amended Settlement Motion was filed in Ms. Blair's Chapter 13 case and a response was filed by Ms. Blair. In her response to the Amended Settlement Motion, Ms. Blair states that she has insufficient information to admit or deny that she, individually, waived any claims that she may have had against Shaw Pittman. However, at the hearing held on August 19, 2002, Ms. Rucker (on behalf of Ms. Blair) stated that although initially Ms. Blair objected to the Settlement Agreement because she was not represented by counsel at the signing of the agreement and because she was misinformed of the tax implications of the settlement, Ms. Blair no longer objected to the terms of the Settlement Agreement. Clearly, the second element of *res judicata* is met.

As for the third element of *res judicata,* the court finds that the allegations asserted in the Malpractice Action arise out of the same core of operative facts as the Shaw Pittman Litigation and Settlement Agreement. Ms. Blair's malpractice action asserts that Freishtat failed to adequately represent her in regards to her individual claims against Shaw Pittman. However, those alleged claims were waived by Ms. Blair in the Settlement Agreement, which included a release by Ms. Blair of any such claims. Both causes of action concern the terms of the Settlement Agreement and the impact of the Settlement Agreement upon the individual claims of Ms. Blair. Upon consideration of the Settlement Agreement and the abandonment by Ms. Blair of any opposition thereto, the court granted final approval of the Settlement Agreement, including all of its terms. Accordingly, the third element of *res judicata* is satisfied and consequently, the Malpractice Action initiated by Ms. Blair is precluded.

■ In the alternative, the court finds that Ms. Blair is estopped from bringing the Malpractice Action against Freisthat based upon the doctrine of judicial estoppel. "Judicial estoppel, also known as the 'doctrine against inconsistent positions,' and 'estoppel by admission,' prevents 'a party who successfully pursued a position in a prior legal proceeding from asserting a contrary position in a later proceeding.' " *Chaney Enterprises Ltd. Partnership v. Windsor*, 158 Md.App. 1, 40, 854 A.2d 233, 256 (Md.Ct.Spec.App.2004)(*quoting Gordon v. Posner*, 142 Md.App. 399, 424, 790 A.2d 675 (Md.Ct.Spec.App.2002))(*cert. denied*, 369 Md. 180, 798 A.2d 552 (Md. 2002)). The Court of Special Appeals of Maryland has explained that there are two important reasons for the doctrine of judicial estoppel: first, the doctrine "rests upon the principle that a litigant should not be permitted to lead a court to find a fact one way and then contend in another judicial proceeding that the same fact should be found otherwise;" and second, the doctrine ensures "the 'integrity of the judicial process' by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment.' " *Id.* (*quoting Gordon v. Posner*, 142 Md. App. at 425, 790 A.2d at 690). In *Chaney Enterprises*, the Court of Special Appeals recognized that courts typically consider three factors when deciding whether to apply the doctrine of judicial estoppel. *Id.* at 41, 854 A.2d 233. The first factor is "whether the party's later position is clearly inconsistent with its earlier position;" the second factor is "whether the party succeeded in persuading the court in the earlier matter to accept its position, so that judicial acceptance of the contrary position in the later matter would create the perception that one of the courts had been misled" and the third factor is "whether the party seeking to assert the inconsistent position in the later matter would derive an unfair advantage, or would impose an unfair detriment on the other party, from being permitted to do so." *Id.*

■ In this case, the original schedules filed in Ms. Blair's Chapter 13 case contained no claim held by Ms. Blair against Shaw Pittman. Nor was a cause of action against Shaw Pittman listed on Ms. Blair's Amended Schedule B, which was filed on February 16, 2000. It was not until December 20, 2002, after the Shaw Pittman Settlement Agreement was approved by this court, that Ms. Blair filed a Second Amended Schedule B to include a claim against Shaw Pittman for $8,000,000.00.[25] Once one considers the timeline of events as set forth in this Memorandum, it is clear that the Second Amended Schedules B and C were an attempt to escape the preclusive effect of Ms. Blair's failure to schedule an individual claim against Shaw Pittman in her original schedules (and amended schedules). Having previously testified to this court through her original Schedule B and Amended Schedule B, which schedules were signed under penalty of perjury, that Ms. Blair had no cause of action against Shaw Pittman, the doctrine of judicial estoppel prevents Ms. Blair from subsequently claiming a cause of action inconsistent with her representations to this court. Under the facts and circumstances of this case, the court finds that the belated second amendment to

---

**25.** The Second Amended Schedule B also included a claim against Freishtat in the amount of $7,000,000.00, which claim could not be considered a pre-petition cause of action since it relates to post-petition activities. As Schedule B is a list of personal property as of the filing of the petition instituting the bankruptcy case (including intangible property such as causes of action), the "claim" against Freishtat was clearly erroneously added to the Second Amended Schedule B.

Schedule B cannot allow Ms. Blair to escape the estoppel effect of the inconsistent positions taken in the original schedules and amended schedules versus the subsequent malpractice action.

Aside from the effect (or lack thereof) of the Second Amended Schedules B and C, there are other instances in which Ms. Blair took positions in this case inconsistent with her later asserted claims in the Malpractice Action. As recounted above, no document in the Chapter 13 case of Ms. Blair indicates any representative role by Freishtat. Neither Ms. Blair, nor her Chapter 13 counsel, ever filed anything indicating that Freishtat was representing Ms. Blair. Moreover, at the hearing held on August 19, 2002 upon the Amended Settlement Motions, Ms. Blair, by counsel, expressly stated that she no longer had any objection to the Shaw Pittman Settlement Agreement (which Agreement included her personal waiver of rights), except as to the calculation of Freishtat's compensation. It was only after the Shaw Pittman Settlement Agreement was approved by the court, in part relying upon Ms. Blair's representations to the court, and the money from that Settlement was received by Trustee Nesse, that Ms. Blair commenced the Malpractice Action against Freishtat complaining of the events surrounding the Settlement Agreement. The assertions contained in the complaint commencing the Malpractice Action are clearly inconsistent with the representations made to this court. Taking such inconsistent positions is precluded under the doctrine of judicial estoppel for two reasons: first, a party should not be permitted to lead a court to find a fact one way and then contend in another judicial proceeding that the same fact should be found otherwise; and second, the integrity of the judicial process must be protected by prohibiting a party from "deliberately changing positions according to the exigencies of the moment." *Chaney Enterprises Ltd. Part-*

*nership v. Windsor,* 158 Md.App. at 40, 854 A.2d 233.

CONCLUSION

Based upon the sequence of events as set forth herein, the court finds that the elements of *res judicata* are met and that equity must prevent Ms. Blair from pursuing the allegations of malpractice against Freishtat. The Orders approving Freishtat's application for legal fees and the Shaw Pittman Settlement Agreement are final Orders rendered by a court of competent jurisdiction, the parties are identical or in privity and the allegations asserted in the Malpractice Action arise out of the same series of events as in the two bankruptcy cases. Alternatively, the court determines that the doctrine of judicial estoppel precludes the Malpractice Action. Accordingly, the motions for summary judgment filed by Freishtat are granted.

An Order in conformity with this Memorandum of Decision shall be entered forthwith.